**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

GRANT MANDIGORA and NEZILE MTHEMBU,

*Plaintiffs*,

v.

THE AMERICAN BOARD OF PEDIATRICS, INC., DR. GLADIBEL MEDINA, and THE HEALTH AND HUMAN SERVICES,

*Defendants*.

Civil Action No. 25-14682

**OPINION**

August 5, 2026

**SEMPER**, District Judge.

**THIS MATTER** returns to the Court after the United States Court of Appeals for the Third Circuit vacated and remanded this Court's denial of Plaintiffs Grant Mandigora and Nezile Mthembu's ("Plaintiffs") Motion for Declaratory and Injunctive Relief against Defendants American Board of Pediatrics ("ABP"), Dr. Gladibel Medina ("Dr. Medina"), the United States Department of Health and Human Services ("DHHS"), and the Administration for Children and Families ("ACF") (collectively, "Defendants"). (*See* ECF 12, "Mandate" or "Man."; ECF 6, "Opinion" or "Op."; ECF 2, "Motion" or "Mot.") This Court concluded it lacked jurisdiction over this matter under the *Younger* abstention doctrine and denied Plaintiffs' Motion. (*See* Op. at 4.) On remand, this Court was instructed to determine whether Plaintiffs' state-court proceedings fell within one of the three categories identified in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) before considering the factors laid out in *Middlesex Cnty. Ethics Comm. v. Garden State*

*Bar Ass'n*, 457 U.S. 423, 432 (1982). (Man. at 2-3.) The Third Circuit also reiterated that the *Younger* abstention doctrine is applied on a claim-by-claim basis, and directed this Court to address whether the state proceedings afford Plaintiffs with an adequate opportunity to raise each of the federal claims they assert in their Complaint. (*Id.* at 3.)

The Court has decided this Motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' Motion for Declaratory and Injunctive Relief is **DENIED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

This matter arises out of Plaintiffs Grant Mandigora and Nezile Mthembu's child custody proceedings in New Jersey Superior Court, Chancery Division, Union County, Family Part ("New Jersey Family Court"). (*See* ECF 1, "Complaint" or "Compl."; ECF 1-1, "Appendix" or "Appx.," Ex. D.) Plaintiffs are the parents of A.M., a minor child. (*Id.* at 1.) On November 21, 2022, the New Jersey Division of Child Protection and Permanency ("NJDCPP") opened an investigation into Plaintiffs for "Factitious Disorder Imposed on Another" ("FDIA"). (*Id.* at 2, ¶¶ 20, 38.)

Plaintiffs make a series of allegations about NJDCPP's investigation and the resulting state court proceedings. Plaintiffs claim that NJDCPP closed the case as unfounded on May 9, 2023. (*Id.* ¶¶ 21, 39; Appx. at Ex. B.) Plaintiffs next allege that, on August 17, 2024, NJDCPP removed A.M. from their custody without the "judicial finding of imminent danger or neglect" required under New Jersey Court Rule ("N.J. Ct. R.") 5:12-4. (*Id.* at 2, ¶¶ 22-23, 40; Appx. at Ex. C.) Plaintiffs allege that NJDCCP next initiated a "Care and Supervision" matter, but then improperly converted the matter into a formal child custody case without conducting the adjudication and fact-finding required under N.J. Ct. R. 5:12-4. (*Id.* ¶¶ 24-26.) Plaintiffs state they subsequently lacked

contact with A.M. from December 2024 to June 2025. (*Id.* ¶ 41.) According to Plaintiffs, NJDCPP failed to establish a permanency determination by June 17, 2025, 12 months from A.M.'s removal, in contravention of 42 U.S.C. § 675(5)(C)-(E). (*Id.* ¶¶ 27-28.)

Plaintiffs also make a series of allegations about NJDCPP's reliance on Dr. Medina's testimony. In June 2025, Dr. Medina, a Child Abuse Pediatrician certified by the ABP, testified at a fact-finding hearing and concluded Plaintiffs had engaged in "Medical Child Abuse" ("MCA"). (*Id.* at 2, ¶¶ 42, 45; *see* Appx. at Ex. A.) Plaintiffs allege that Dr. Medina's opinions "exceeded her clinical authority" and violated the professional standards of the APB and the Accreditation Council for Graduate Medical Education ("ACGME"). (*Id.* at 2, ¶¶ 29-30, 52.) For example, Plaintiffs allege Dr. Medina never interviewed nor evaluated Plaintiffs. (*Id.* ¶ 46.) Plaintiffs also allege that Dr. Medina's methodology fails under Federal Rule of Evidence 702 and does not meet the standard laid out in *Daubert v. Merrell Dow. Pharms.*, 509 U.S. 579, 589 (1993). (*Id.* ¶ 49.) NJDCPP allegedly adopted Dr. Medina's recommendations, which included psychological evaluations, supervised visitation, and delayed reunification, and relied on them in A.M.'s removal proceedings in New Jersey Family Court. (*Id.* at 2, ¶ 48.) Plaintiffs also allege that the APB improperly enabled and credentialed Dr. Medina. (*Id.* ¶¶ 48, 56-63.)

In addition, Plaintiffs further allege that ACF improperly approved New Jersey's Title IV-B and IV-E plans under the Social Security Act and wrongly reimbursed the State for foster care maintenance payments. (*Id.* ¶¶ 32, 33, n.16, 66.) Specifically, Plaintiffs allege that ACF failed to investigate and intervene in NJDCPP's "reliance on unqualified expert testimony, coercive reunification conditions, failure to make 'reasonable efforts' to prevent removal in a state Title 30 case, and the complete omission of a required reunification plan." (*Id.* ¶¶ 15, 71.) Plaintiffs

contend ACF should not have reimbursed the State given these ongoing violations. (*Id.* ¶ 32.)

At the time of filing their Complaint, Plaintiffs alleged they had been forcibly separated from A.M. for nearly twelve months, and that they were facing a risk of Termination of Parental Rights under the Adoption and Safe Families Act, 42 U.S.C. § 675(5)(E). (*Id.* at 3.)

Ultimately, Plaintiffs assert Defendants violated the Administrative Procedure Act and their procedural due process, substantive due process, and First Amendment rights throughout the State's investigation and child custody proceedings. (*Id.* at 23-26.) Plaintiffs request injunctive and declaratory relief. (*Id.* at 26-27.) Specifically, in their Motion for Declaratory and Injunctive Relief, Plaintiffs asked this Court to (1) enjoin APB and Dr. Medina "from offering, relying upon, or permitting reliance upon Dr. Medina's 'Medical Child Abuse' opinions or her American Board of Pediatrics certification in any proceedings affecting Plaintiffs," and prohibit the use of Dr. Medina's APB credentials "to support potentially unconstitutional state action without lawful evidentiary review"; (2) enjoin DHHS and its subordinate organization, ACF, from "continuing to approve or disburse Title IV-B or IV-E funds to the State of New Jersey for actions that fail to meet the requirements of 42 U.S.C. § 671(a)(15), 42 U.S.C. § 675(5), and 45 C.F.R. §§ 1356.21(b)(2), 1356.60(c)(3), including removal without adjudicated findings of abuse or neglect, unlawful reunification conditions, and missed permanency deadlines"; and (3) enjoin ACF and Dr. Medina from "the enforcement or implementation of any order, policy, or practice that separates Plaintiffs from their minor child absent adjudicated findings of abuse or neglect made in compliance with federal law, including 42. U.S.C. § 671(a)(15) and 45 C.F.R. § 1356.21." (Mot. at 23-24.)

**B. Procedural History**

Plaintiffs filed their Complaint and Motion in this Court on August 15, 2025. (*See* Compl.;

Mot.) This Court denied Plaintiffs' Motion on August 19, 2025, concluding that it was required to abstain from issuing a ruling under the *Younger* abstention doctrine. (Op. at 4.) The Court concluded that Plaintiffs were engaged in ongoing state proceedings in New Jersey Family Court, that those proceedings implicated an important state interest, and that Plaintiffs failed to present evidence indicating that the state proceedings did not afford them with an adequate opportunity to raise their federal claims. (*See id.*)

Plaintiffs filed a Notice of Appeal on August 21, 2025, (ECF 7), and on July 30, 2026, the Third Circuit issued a Mandate vacating this Court's Opinion and remanded the case back to this Court. (*See* Man.) This Opinion follows.

## II. LEGAL STANDARDS

### A. *Younger* Abstention Doctrine

"*Younger* abstention operates as an exception to a federal court's 'virtually unflagging' obligation to hear and decide cases over which it has jurisdiction." *Silver v. Ct. of Common Pleas of Allegheny Cnty.*, 802 F. App'x 55, 58 (3d Cir. 2020) (citing *Sprint*, 571 U.S. at 77). In *Sprint*, the Supreme Court of the United States concluded that *Younger* "applies to only 'three exceptional categories' of proceedings: (1) 'ongoing state criminal prosecutions'; (2) 'certain civil enforcement proceedings'; and (3) 'pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019) (internal quotations omitted) (citing *Sprint*, 571 U.S. at 78-79).

If a court finds that the state proceeding fits into one of the above exceptional categories, only then must it consider the additional *Middlesex* factors: whether "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests;

and (3) the state proceedings afford an adequate opportunity to raise federal claims." *See id.* (quoting *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989)) (citing *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432).

## III. ANALYSIS

### A. *Sprint's* Exceptional Categories

Plaintiffs' state proceedings fit into *Sprint's* second exceptional category and constitute a civil enforcement action over which this Court must refrain from exercising jurisdiction. In *Sprint*, the Supreme Court concluded that the types of civil enforcement actions to which *Younger* abstention extends are "akin to a criminal prosecution" in "important respects." *Sprint*, 571 U.S. at 79; *see also Malhan*, 938 F.3d at 463. *Sprint* itself contemplated that state child custody proceedings qualify as "certain civil enforcement proceedings" deserving of *Younger* abstention, "cit[ing] as an example a case involving 'state-initiated proceedings to gain custody of children allegedly abused by their parents.'" *Vaughn: Douce v. N.J. Div. of Child Prot. and Permanency*, No. 21-1596, 2021 WL 3403670, at *2 (3d Cir. Aug. 4, 2021) (citing *Sprint*, 571 U.S. at 79). The example is *Moore v. Sims*, where the Supreme Court concluded that *Younger* abstention applied to a state child custody proceeding. *See* 442 U.S. 415, 423 (1979). In doing so, the Supreme Court likened the child custody proceeding at issue to a state criminal proceeding, noting that "the State … was a party to the state proceedings, and the temporary removal of a child in a child-abuse context is … 'in aid of and closely related to criminal statutes.'" *See id.* While predating *Sprint*, *Moore* indicates a longstanding federal judicial practice of abstaining from matters involving state child custody proceedings.

Nevertheless, Plaintiffs' state proceedings qualify as civil enforcement actions "akin to a criminal prosecution" under *Sprint* and its progeny. *See Sprint*, 571 U.S. at 79. "In evaluating

whether a state proceeding is quasi-criminal," this Circuit considers "whether (1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014).

At least two of the factors are present in Plaintiffs' ongoing state-court proceeding. First, the action was commenced by the State. (*See* Compl. ¶¶ 20, 22, 25-26, Appx. at Exs. D-E.) Here, as in *Vaughn: Douce*, the NJDCPP initiated an investigation into and child custody proceedings against Plaintiffs in New Jersey Family Court, resulting in the State receiving custody of A.M. (*See id.*); *Vaughn: Douce*, 2021 WL 3403670, at *1-2 (concluding that an investigation initiated by the NJDCPP and resulting in the termination of the plaintiff's parental rights in favor of the state agency fit into *Sprint's* second category); *see also Figueroa v. Superior Ct. of New Jersey*, No. 21-9970, 2022 WL 190667, at *4 (D.N.J. Jan. 21, 2022) (concluding that child custody proceedings initiated by the NJDCPP against plaintiffs in New Jersey Superior Court constituted a quasi-criminal civil enforcement proceeding under *Sprint*); *Hook v. Pike Cnty.*¸ No. 23-1204, 2024 WL 3237142, at *10 (W.D. P.a. June 8, 2024) (concluding that child custody proceedings initiated by "an arm of the state," the Pike County Children, Youth, Family Services, fit into *Sprint's* second category).

Second, Plaintiffs' state proceedings bear similarities to criminal actions, as they included a preliminary, state-led investigation that culminated in the State's removal of A.M. from their custody and the New Jersey Family Court's issuance of no-contact custody orders and holding of a trial. (*See* Compl. ¶¶ 20-26; Appx. at Exs. D-E); *see Hook*¸ 2024 WL 3237142, at *10 (noting similarities between child custody proceedings and criminal proceedings where "there was an

official investigation into the care of the children and a determination that it would no longer be in the children's best interest to remain in their parents' custody"). As such, this Court concludes that Plaintiffs' ongoing state court proceedings are akin to the type of civil enforcement proceeding contemplated by *Sprint*. *See Sprint*, 571 U.S. at 79; *Vaughn: Douce*, 2021 WL 3403670, at *2; *Figueroa*, 2022 WL 190667, at *4; *Hook*, 2024 WL 3237142, at *10.

**B. *Middlesex* Factors**

Having determined that this matter falls into *Sprint's* second exceptional category, the Court returns to the *Middlesex* factors, and again finds that each factor favors abstention. As discussed, the Court considers whether "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *See Malhan*, 938 F.3d at 462.

First, Plaintiffs were engaged in ongoing state proceedings in New Jersey Family Court when they filed their Complaint in this Court. (*See* Compl. (filed on August 15, 2025); Appx., Ex. D at 10 (indicating that Plaintiffs were set to have a permanency hearing related to their custody proceedings in New Jersey Family Court on August 20, 2025)); *see PDX North, Inc. v. Comm'r New Jersey Dep't of Lab. and Workforce Dev.*, 978 F.3d 871, 885 (3d Cir. 2020) ("[S]tate proceedings are ongoing for *Younger* abstention purposes … if the state proceeding was pending at the time the plaintiff filed its initial complaint in federal court[.]" (internal quotations and citations omitted)).

Second, Plaintiffs' state proceedings "implicate important state interests." *See Malhan*, 938 F.3d at 462. "Family relations are a traditional area of state concern," *Moore*, 442 U.S. at 435, and "it is well established that 'the protection of children from abuse and neglect is an important state interest.'" *See Figueroa*, 2022 WL 190667, at *4 (quoting *Howard v. New Jersey Div. of*

*Youth & Fam. Servs.*, 398 F. App'x 807, 811 (3d Cir. 2010)).

Third, "the state proceedings afford an adequate opportunity" for Plaintiffs to "raise federal claims." *See Malhan*, 938 F.3d at 462. "Once a party has appeared in state court and has had 'an opportunity to present [its] federal claims in the state proceedings,' a federal court normally should refrain from hearing the claims." *Anthony v. Council*, 216 F.3d 412, 419 (3d Cir. 2003). Plaintiffs bear the "burden of showing 'that state procedural law barred presentation of [their] claims.'" *Figueroa*, 2022 WL 190667, at *4 (quoting *Greco v. Bruck*, No. 21-1035, 2021 WL 5276674, at *3 (3d Cir. Nov. 12, 2021)). On remand, the Third Circuit directed this Court to address whether the state proceedings afford Plaintiffs an adequate opportunity to raise each of their federal claims. (*See* Man. at. 3.)

Plaintiffs make a series of claims about their ability to adequately raise their federal claims in the state proceedings. They assert that their "federal questions have been ignored" by the New Jersey Family Court; the state court proceedings relied on evidence failing federal standards; their interlocutory appeal was "obstructed by a case manager's actions and denied without merits review;" their complaints alleging bad faith interference "were dismissed without substantive review;" their emergency application to the New Jersey Supreme Court "was denied without consideration of the federal issues;" and they were subject to bias in the state court proceedings. (*See* Compl. at 6.)

However, the Cout concludes Plaintiffs may raise each of their federal claims in an appeal in New Jersey state court. While there is some ambiguity as to whether they are subject to child custody proceedings under Title 9 or Title 30 of the New Jersey Statutes, (*see id*. at 13-14; Appx. at Ex. J), Plaintiffs maintain the right to appeal orders or decisions, and bring federal claims in doing so, under either provision. *See Figueroa*, 2022 WL 190667, at *4; *New Jersey Div. of Youth*

*and Family Serv. v. P.H.*, No. A-1935-11T1, 2013 WL 2120315, at *8 (N.J. Super. Ct. May 17, 2013) (noting that "under Title Nine, all final orders are appealable" and that "an order entered after a permanency hearing is interlocutory as the case is still pending"); *New Jersey Div. of Child Prot. and Permanency v. V.E.*, 153 A.3d 941, 944 (N.J. Super. Ct. 2017) (plaintiff bringing due process claims on state of appeal outcome of Title 9 and Title 30 child custody proceedings); *New Jersey Div. of Child Prot. and Permanency v. K.M.*, No. A–5112–15T1, 2018 WL 1733963, at *1 (N.J. Super. Ct. Apr. 11, 2018) (plaintiff contending that her due process rights were violated in an appeal of an order issued in a N.J.S.A. § 30:4C-12 proceeding); N.J.S.A. § 9:6-8.70 ("An appeal from a final order or decision in a case involving child abuse may be taken as of right to the Appellate Division of the Superior Court.").

Plaintiffs themselves present evidence indicating that the New Jersey state courts have considered and denied their various appeals and emergency applications to date. (*See id.* at 6, nn.3-4; Mot. at 14 (indicating that Plaintiffs' interlocutory appeal was filed on March 20, 2025 and dismissed on May 27, 2025, that their emergency appeal was filed on April 8, 2025 and dismissed on April 10, 2025, that their emergency petition was filed on April 10, 2025 and denied on April 11, 2025, and that their formal complaint of procedural and prejudicial irregularities was filed on May 22, 2025 and rejected on May 27, 2025).) None of Plaintiffs' allegations indicate that they were, or will be, procedurally barred from bringing their federal claims in the available state forums.[1] As such, this Court is satisfied that the state proceedings afford Plaintiffs an opportunity

[1] Plaintiffs make a series of allegations about "procedural deficiencies" in their interlocutory appeal, filed on March 20, 2025 before the New Jersey Superior Court, Appellate Division. (Mot. at 14; Compl. at 6, 29; Appx. at Ex. L.) Specifically, Plaintiffs allege that they received no "confirmation of docketing" or "judicial review" with respect to Plaintiff Mthembu's "Motion Answer," received no prior notice of their deadline to respond to Defendants' Motion to Extend, and did not receive Defendants' briefs or appendices. (Compl. at 6, 29; Appx. at Ex. L.) However,

to raise each of the claims they assert in their Complaint. *See Foster v. New Jersey Div. of Child Prot. and Permanency*, No. 17-13572, 2018 WL 6069632, at *15 (D.N.J. Nov. 20, 2018) (declining to exercise jurisdiction where "there [wa]s no reason why Plaintiff [could] not raise his constitutional claims in the ongoing state proceedings" or "take an appeal within the state court system"); *Harbour v. Grahm*, No. 9-1509, 2009 WL 2488145, at *4 (D.N.J. Aug. 11, 2009) (declining to exercise jurisdiction over a child custody matter where the plaintiff could raise "any constitutional challenges he ha[d] with respect to the custody decision in his state court case"); *Romanova v. Epp*, No. 17-2720, 2017 WL 1907868, at *2 (D.N.J. May 8, 2017) (declining to exercise jurisdiction where the plaintiff could raise constitutional claims regarding her child custody case on appeal in Florida state court).

**C. *Younger* exceptions**

Even where the *Middlesex* factors are met, however, this Circuit has held that *Younger* abstention is inappropriate if a "federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." *See Schall*, 885 F.2d at 106. Neither exception applies here.

Plaintiffs contend that abstention is inappropriate because the state proceedings are "conducted in bad faith and constitute harassment." (Mot. at 14-15.) Plaintiffs present no other argument with respect to their allegations of bad faith and harassment, rendering them conclusory

---

none of Plaintiffs' allegations speak to whether state law itself barred the presentation of their federal claims. *See Figueroa*, 2022 WL 190667, at *4 (quoting *Greco*, 2021 WL 5276674, at *3).

and insufficient. *See Kelly v. Swartz*, Nos. 21-3198 & 22-2079, 2023 WL 3018282, at *3 (3d Cir. Apr. 20, 2023) (concluding that the plaintiff's allegation that "abstention was inappropriate due to 'bad faith, harassment, or extraordinary circumstances'" was conclusory and insufficient to "warrant a *Younger* exception").

Plaintiffs also contend that "[e]xtraordinary circumstances exist, including imminent irreparable harm and the risk that final state judgment will bar any federal review under *Rooker-Feldman*." (Mot. at 14-15.) However, courts in this Circuit have concluded that child custody disputes and the potential termination of parental rights do not, on their own, establish extraordinary circumstances requiring immediate federal relief. *See, e.g.*, *C.P. v. City of Jersey City*, No. 25-1315, 2026 WL 851210, at *4 (D.N.J. Mar. 26, 2026); *Colon-Marte v. Martinez-Arce*, No. 25-509, 2026 WL 1513029, at *6 (M.D. P.a. Feb. 27, 2026) ("Domestic custody disputes are, unfortunately, commonplace, and do not present a compelling federal interest."). Further, the Third Circuit has also held that "[t]he state agency or court must be 'incapable of fairly and fully adjudicating the federal issues before it' for [the extraordinary circumstances] exception to apply." *Getson v. New Jersey*, 352 F. App'x 749, 753 (3d Cir. 2009). And here, as discussed, Plaintiffs have not alleged, nor has this Court concluded, that the state appellate system is unable to adjudicate their federal claims.

## IV. CONCLUSION

For the foregoing reasons, this Court lacks jurisdiction over this case pursuant to the *Younger* abstention doctrine. Plaintiffs' Motion for Declaratory and Injunctive Relief is therefore **DENIED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Cari Fais, U.S.M.J.
Parties